FILED
2016 Oct-20  PM 01:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| OTIS CLYDE JONES, III, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | Case No.: 2:16-CV-00569-RDP |
| | } | |
| CAROLYN W. COLVIN, | } | |
| COMMISSIONER OF | } | |
| SOCIAL SECURITY, | } | |
| | | |
| **Defendant.** | | |

## MEMORANDUM OF DECISION

Plaintiff Otis Clyde Jones, III brings this action pursuant to both Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See also*, 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      Proceedings Below

Plaintiff filed his application for a period of disability, DIB, and SSI on February 7, 2013 in which he alleged that his disability began on October 20, 2012. (Tr. 14). The Social Security Administration ("SSA") denied plaintiff's application on May 25, 2013. (*Id.*) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on May 25, 2013. (*Id.*) The Honorable Cynthia W. Brown conducted the ALJ hearing in which Plaintiff testified on July 3, 2014. (*Id.*) In her decision, dated December 18, 2014, the ALJ determined that Plaintiff had not

been under a disability within the meaning of §§ 216(i), 223(d), or 1614(a)(3)(A) of the Act from October 20, 2013 through the date of her decision. (Tr. 21). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on February 11, 2016; therefore, the decision of the ALJ became final and properly a subject of this court's appellate review.

## II.     Facts

Plaintiff was 47 years old at the time of the hearing. (Tr. 20). He alleges disability since October 20, 2012 due to chronic pain in his back radiating primarily down his right leg following a work-related injury and surgery on his back. (Tr. 255). Plaintiff has a high school education and past relevant work as a maintenance supervisor and a building maintenance engineer. (Tr. 20).

During his alleged period of disability, Plaintiff received treatment and evaluations from several physicians regarding his chronic back pain. Plaintiff underwent surgery to repair lumbar disc herniation at L5-S1, right, on October 6, 2009. (Tr. 247-48). Despite surgery, his pain persisted and an MRI showed degenerative changes to Plaintiff's back at L4-5 and L5-S1 as well as post-operative changes at L5-S1; however, no significant recurrence of disc herniation or nerve root encroachment was evident. (Tr. 256). Plaintiff was referred to pain management by the VA hospital on January 25, 2011 and received an epidural block as treatment on March 9, 2011. (Tr. 259). He received another epidural block from Dr. David W. Cosgrove of PainSouth on April 13, 2012. (Tr. 261). Plaintiff returned to Dr. Cosgrove on January 30, 2013, complaining of back pain which Plaintiff rated a 5/10 on that day and an average of 6/10 over the last month on a scale of 0 to 10. (Tr. 263). Dr. Cosgrove diagnosed Plaintiff with lumbago, lumbar degenerative disc disease, lumbar radiculitis, lumbar postoperative radiculitis (failed back surgery syndrome), and chronic pain syndrome. (Tr. 265).

After several months, Plaintiff received three more epidural blocks on September 9, September 23, and October 7, 2013, respectively. (Tr. 289-91). On November 6 and December 3, 2013, in coordination with visits to Dr. Cosgrove, Plaintiff took a Urine Drug Screen, which on both occasions was "non-negative for cannabinoid." (Tr. 281, 285). On both of these visits Plaintiff rated his pain on a scale of 0 to 10 at 5/10 and an average of 5/10 over the last month. (*Id.*) Plaintiff's pain regimen varied during these visits based on the effectiveness and side effects of his medications. While Dr. Cosgrove prescribed Cymbalta, Flexeril, and Norco in January of 2013, by December of that year he was only taking Cyclobenzaprine and Norco. (Tr. 263, 281-84). At the December 3, 2013 visit, Dr. Cosgrove added a diagnosis of lumbar radiculopathy to Plaintiff's impairments. (Tr. 283). Upon that visit, because of Plaintiff's non-compliance with his pain regimen (*i.e.*, his continued use of cannabis), Dr. Cosgrove discharged Plaintiff from his care and instructed him to contact his case manager in order to find a new pain management clinic. (Tr. 284).

Plaintiff's new pain manager was Dr. Michael S. Kendrick at Southside Pain Specialists. (Tr. 274). Plaintiff visited Dr. Kendrick on March 12 and August 20, 2014. (*Id.*) On his first visit, Plaintiff gave his current pain level at 7/10, his average pain level at 7/10, his pain at its worst at 9/10, and his pain at its best at 6/10. (Tr. 275). At this visit Plaintiff admitted to marijuana use and tested positive for cannabinoid. (Tr. 274, 277).

Plaintiff was treated at the Birmingham VA Medical Center (VAMC) beginning in June of 2013. (Tr. 18). At the VAMC, Plaintiff's Mental Health Treatment Coordinator was Dr. Rudy Vuchinich, whom he saw on at least four occasions. (Tr. 308, 363). On June 21, 2013, Dr. Vuchinich diagnosed Plaintiff with depression and suggested Plaintiff may suffer from PTSD, but did not include this in his diagnosis of record. (Tr. 363). In October 2013, Dr. Vuchinich

assigned Plaintiff a GAF score of 55. (Tr. 337). Plaintiff also saw a personal care physician, Dr. Carey W. Ketchum, at the VAMC. (Tr. 292-440). Dr. Ketchum treated Plaintiff for a fracture in his hand on November 1, 2013. (Tr. 325).

Consultative psychologist Dr. Cynthia Neville examined Plaintiff on August 8, 2014. (Tr. 442). She diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood. (Tr. 445). She noted that Plaintiff had stopped taking an anti-depressant prescribed by Dr. Vuchinich because it made him too jittery. (Tr. 442). She further noted that Plaintiff did not meet the criteria to be diagnosed with major depressive disorder, PTSD, or generalized anxiety disorder. (Tr. 445). She also determined that Plaintiff had no mental impairments regarding his ability to understand and remember simple instructions, carry out simple instructions, or make judgments on simple work-related decisions. (Tr. 447). Dr. Neville found that Plaintiff had mild impairments regarding his ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related judgments. (*Id.*) Dr. Neville also suggested that Plaintiff was mildly restricted in his ability to interact appropriately with the public, a supervisor, and co-workers. (Tr. 448). Plaintiff also was mildly restricted in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*)

At the ALJ hearing, Plaintiff testified that his pain ranged from about an 8/10 or 9/10 when he first woke up in the morning and between 5/10 and 6/10 after he took medication. (Tr. 56). Plaintiff stated that he was unable to sit for long periods of time, bend, lift, or stand. (Tr. 54). Plaintiff also testified that he has trouble sleeping because of his pain. (Tr. 55). He reported that his prescribed medications help treat his pain but also make him nauseas, forgetful, and tired. (*Id.*) Plaintiff's current medications at the time of the hearing included lortab, celebrex, flexural, lyrica, and a stool softener. (Tr. 56). Plaintiff testified that these medications were originally

prescribed by Dr. Cosgrove but more recently had been prescribed by Dr. Kendrick. (Tr. 57). Plaintiff also testified that during the day, he spends most of his time sitting, watching television. (Tr. 61).

### III.     ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).    Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant

work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, October 20, 2012. (Tr. 16). The ALJ determined that Plaintiff suffered from several severe impairments: lumbar degenerative disc disease, lumbar radiculopathy, and post laminectomy syndrome. (*Id.*) The ALJ concluded, however, that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 17). The ALJ determined that Plaintiff had the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he should work in a temperature controlled environment without exposure to hazards. He can occasionally push and pull with his lower extremities, bilaterally." (*Id.*)

In reaching her conclusions as to Plaintiff's RFC, the ALJ followed the two-step process, first determining "whether there [was] an underlying medically determinable physical or mental impairment(s)… that could reasonably be expected to produce [Plaintiff's] pain or other symptoms." (Tr. 17). In particular, the ALJ concluded that Plaintiff's impairments could reasonably be expected to cause his symptoms. (Tr. 19). The second step required the ALJ to evaluate the "intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine

the extent to which they limit the [Plaintiff's] functioning." (Tr. 17). At this step, the ALJ

concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of

these symptoms are not entirely credible." (Tr. 19).

       The ALJ based her decision on several pieces of evidence. First, the ALJ noted that

Plaintiff consistently reported a pain level of 5/10 and that he had averaged a level of 5/10 or

6/10 in the month prior to the appointment. (Tr. 19, 263). The ALJ also took into account the fact

that Plaintiff reported to physicians at the VAMC that his back problem had become more severe

and that an outside surgeon suggested additional surgery. (Tr. 19). Despite this statement, there is

no evidence in the record that a surgeon made such recommendation. (*Id.*) Further, prior to a

visit to the VAMC on February 7, 2014, Plaintiff had not reported a pain level greater than 3/10

to the VAMC. (*Id.*) The ALJ also noted that Plaintiff reported spending most of his time taking

care of his small children. (*Id.*) Despite self-reporting an average pain level of 7/10 to Dr.

Kendrick in March, 2014, Plaintiff also confirmed that he was not taking his medications. (Tr.

278). The ALJ concluded "[w]hen [Plaintiff] has been taking medications, his reported pain has

been chronic, but it is mild to moderate and not moderately severe to severe." (Tr. 19).

       Following this determination, the ALJ found that Plaintiff was not able to perform any

past relevant work. (Tr. 19). The ALJ observed that Plaintiff is a younger individual, age 18-49,

had at least a high school education, and able to communicate in English. (Tr. 20). She also

concluded that the transferability of job skills was not material to the determination of disability

because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff is

not disabled. (*Id.*) The ALJ also found that given Plaintiff's RFC, age, education, and work

experience, jobs existed in significant numbers in the national economy that she was able to

perform. (Id.) This determination was based on the Vocational Expert's ("VE") testimony. The

VE testified that a hypothetical person with Plaintiff's RFC, age, education, and work experience could perform several jobs: cashier II, 6,000 jobs in Alabama, 300,000 nationally; production assembler, 3,000 jobs in Alabama, 200,000 nationally; and a packing line worker, 1,000 jobs in Alabama, 100,000 nationally. (Tr. 65-66). Finally, because jobs existed in significant numbers in the national economy that Plaintiff could perform, the ALJ determined that Plaintiff was not disabled from the alleged onset date, October 20, 2012, through the date of her decision, December 18, 2014. (Tr. 21).

## IV.     Plaintiff's Argument for Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (*See* Pl.'s Mem. 9). Plaintiff's sole argument is that the ALJ failed to properly evaluate the credibility of Plaintiff's testimony of disabling symptoms consistent with the Eleventh Circuit pain standard. (Pl.'s Mem. 3).

## V.      Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the

decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).   If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.   While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI.   Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A.   The ALJ Properly Evaluated the Credibility of the Plaintiff's Testimony of Disabling Symptoms Consistent with the Eleventh Circuit Pain Standard

Plaintiff alleges that the ALJ improperly assessed the Plaintiff's credibility by failing to properly credit the Plaintiff's testimony regarding his physical pain. Of course, Plaintiff bears the burden of establishing that he is disabled. *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007). Here, Plaintiff must satisfy two parts of a three-part test showing: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).   After the ALJ determines that Plaintiff has a medically determinable

impairment that could reasonably be expected to produce his pain, she must then evaluate the intensity and persistence of Plaintiff's symptoms to determine if they limit his capacity to work. 20 C.F.R. § 404.1529(c)(1). The ALJ should utilize all available evidence in making this determination. *Id.*

"A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). If the ALJ discredits Plaintiff's subjective testimony, she must articulate "explicit and adequate reasons for doing so." *Id.* Plaintiff's medical records must be reviewed to determine if his complaints of pain are demonstrable within the record. 20 C.F.R. 404.1529(c)(1). There are several circumstances under which an ALJ may conclude that complaints of pain are not credible. Claims of long-term pain may be discredited by evidence that the "pain had not require[d] routine or consistent treatment." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). *See Ogranaja v. Comm'r of Soc. Sec. Admin.*, 186 F. App'x 848, 851 (11th Cir. 2006) (gaps in treatment history may be used as evidence to discredit claims of disabling pain). The Eleventh Circuit has also held that "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)). The ALJ may consider Plaintiff's daily activities as a factor in determining the credibility of pain claims. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

In applying the three-part test, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms of pain. (Tr. 19). The ALJ went on to find, however, that Plaintiff's statements regarding the intensity and persistence of these symptoms were not credible. (*Id.*) The ALJ properly considered the entire

record in making this determination. In so doing, the ALJ found certain facts and articulated several reasons in support of her conclusion. First, the ALJ noted that Dr. Cosgrove, who treated Plaintiff, reported that Plaintiff was moderately active and that Plaintiff's pain was in the moderate range of 5/10 or 6/10. The ALJ also observed that Dr. Cosgrove discharged Plaintiff after his refusal to follow his prescribed medical treatment and cease use of marijuana. (Tr. 263, 281). There were several other occasions where Plaintiff failed to follow the regimen of medication prescribed. On November 6, 2013, Dr. Cosgrove noted that Plaintiff had not been compliant with his medication regimen. (Tr. 285). Specifically, Plaintiff was 44 pills short on a prescription of Norco, filled that prescription early, and last took Norco on November 1st, thereby overmedicating. (*Id.*) Plaintiff also continued to test positive for marijuana after he was discharged from Dr. Cosgrove and reported his use of marijuana to Dr. Vuchinich. (Tr. 319, 342, 349). Dr. Kendrick's notes also conclude that as of March 12, 2014, Plaintiff had borrowed medications, taken non-prescribed medications, and overtaken medications. (Tr. 278). On that visit Plaintiff reported that his pain level was 7/10. (Tr. 275). However, Dr. Kendrick noted that Plaintiff was not currently taking any prescribed medication. (Tr. 278). These several instances constitute substantial evidence that Plaintiff failed to follow his regimen of pain medications.

The ALJ also noted that until February 2014, Plaintiff had not reported pain to the VAMC greater than 3/10. In fact, on October 31, 2013, April 16, 2014, and June 13, 2014, Plaintiff reported pain levels of 3/10. (Tr. 333, 427, 439). On June 21, 2013 and October 4, 2013, Plaintiff reported pain levels of 0/10. (Tr. 347, 427). Although Plaintiff testified in the ALJ hearing that he spent most of his time watching television because of his pain, Plaintiff's record indicates that as of February 7, 2014, he had told Dr. Vuchinich that he "now devotes much of his time to parenting his children." (Tr. 60, 308). Dr. Vuchinich previously made similar notes

about Plaintiff spending most of his time taking care of his children on October 4, 2013 and December 9, 2013. (Tr. 319, 327). On August 27, 2013, October 4, 2013, and January 9, 2014, Plaintiff brought his three-year-old daughter with him to appointments with Dr. Vuchinich. (Tr. 337, 342, 349). Plaintiff's daily activities and reports of low pain levels to the VAMC discredit his allegations of severe pain.

Plaintiff correctly asserts that allegations of pain are more credible when a longitudinal medical record demonstrates that he has sought help for pain, is prescribed medicine for that pain, and follows his treatment regimen. (Pl.'s Mem. 5). However, the record does not demonstrate that Plaintiff consistently sought help for his alleged pain or followed the treatment regimen he was prescribed when he did seek medical help. After receiving an epidural block in March 2011, Plaintiff did not return for further treatment until April 2012. (Tr. 261). After that, Plaintiff did not seek out treatment until January 2013, nine months later. (Tr. 263). After his January visit to Dr. Cosgrove, Plaintiff did not return until September 2013. (Tr. 291). These gaps in Plaintiff's treatment history constitute substantial evidence that he did not consistently seek treatment for his alleged pain.

In her decision, the ALJ listed explicit reasons for discrediting Plaintiff's testimony regarding his alleged pain. The ALJ considered the entire record and discredited Plaintiff's testimony for several reasons: Plaintiff's failure to follow medication regimens, his ability to care for his small children daily, and his reports of low pain levels to the VAMC. (Tr. 19). The court also acknowledges the Commissioner's argument regarding evidence that Plaintiff did not consistently seek treatment for his pain although it is not listed in the ALJ's reasoning for discrediting the Plaintiff's allegations of severe pain. (Def.'s Mem. 11). These facts constitute

12

substantial evidence that Plaintiff's pain was not severe and support the ALJ's conclusion that although Plaintiff's pain was chronic, it was mild to moderate. (Tr. 19).

## VII.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this October 20, 2016.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE